**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEPHEN AND BARBARA WOOD,**
**PARENTS OF J.W., A disabled child,**

                **Plaintiffs,**              **1:08-CV-1371 (NAM/RFT)**

**v.**

**KINGSTON CITY SCHOOL DISTRICT and the**
**STATE EDUCATION DEPARTMENT,**
**COMMISSIONER RICHARD MILLS,**
**in his individual capacity,**

                **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

Family Advocates, Inc.                Rosalee Charpentier, Esq.
209 Clinton Avenue
Kingston, New York 12401
_For Plaintiffs_

Shaw, Perelson, May & Lambert, LLP      Mark C. Rushfield, Esq.
21 Van Wagner Road
Poughkeepsie, New York 12603
_For Defendant Kingston City School District_

Andrew M. Cuomo                Megan M. Brown,
Attorney General of the State of New York    Assistant Attorney General
The Capitol
Albany, New York 12224
_For Defendants State Education Department and_
_Commissioner Richard Mills_

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

## I.     INTRODUCTION

      Plaintiffs Stephen and Barbara Wood, parents of J.W., a disabled child, bring this

action against defendants Kingston City School District ("the District"), the State Education

Department, and Commissioner Richard Mills, in his individual capacity, under the Individuals

with Disabilities in Education Act, 20 U.S.C. § 1401-1482 ("IDEA"), Article 89 of the New

York State Education Law, the Regulations of the Commissioner of Education, Part 200, and

the due process clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

In their first cause of action, plaintiffs allege that the individualized education plan

("IEP") the District formulated for J.W.'s tenth grade year (2007-2008) failed to offer a "free

appropriate public education", in violation of the IDEA.[1]  Plaintiffs seek reimbursement for the

tuition and costs associated with their unilateral placement of J.W. at The Kildonan School, a

private school for dyslexic students.  In their second cause of action, plaintiffs allege that

defendant New York State Education Department and Commissioner Mills violated the IDEA

because the State Review Officer ("SRO") who considered this matter at the state

administrative level, was biased.  Plaintiffs further allege that the State Education Department

and Commissioner Mills violated the due process clause of the Fourteenth Amendment and

seek relief under 42 U.S.C. § 1983.

Prior to filing this action, plaintiffs commenced an administrative proceeding before an

---

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A); *see also Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006).  To that end, the IDEA guarantees that a child with a disability receives a free appropriate public education from as early as age three until age twenty-one.  *See* 20 U.S.C. § 1412(a)(1)(A) (providing IDEA funding to states to ensure that eligible children receive a free appropriate public education).  A free appropriate public education "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.2d 119, 122 (2d Cir. 1998).

Impartial Hearing Officer ("IHO") challenging the 2007-2008 IEP.  Plaintiffs claimed the 2007-2008 IEP was defective procedurally and substantively under the IDEA, and sought reimbursement for the tuition and costs associated with their placement of J.W. at Kildonan for that school year.  The IHO conducted a hearing and issued a decision finding that the 2007-2008 IEP the District's Committee on Special Education ("CSE") proposed for J.W. did not offer a free appropriate public education; that plaintiffs' placement of J.W. at Kildonan was appropriate; and that the equities favored tuition reimbursement to plaintiffs.  The District appealed and an SRO affirmed the IHO's finding that the IEP did not offer a free appropriate public eductation and that plaintiffs' placement of J.W. at Kildonan was appropriate.  The SRO, however, found that the equities did not support an award of tuition reimbursement because plaintiffs' notice to the District of their dissatisfaction with the IEP and intent to enroll J.W. in Kildonan was untimely, and annulled the IHO's decision in that regard.  This action followed.

Presently before the Court are plaintiffs' motion for summary judgment, the District's cross-motion for summary judgment, and a motion to dismiss by the State Education Department and Commissioner Mills.

## II.    BACKGROUND

At the time of the events at issue in this lawsuit, J.W. was a fifteen-year old learning disabled student who had been diagnosed with dyslexia.  J.W. had attended school in the Kingston City School District from kindergarten through the middle of eighth grade (the 2005-2006 school year) when his parents enrolled him at The Kildonan School because he was having great difficulty reading and writing as well as emotional difficulties stemming from his

academic problems.  Shortly after receiving notification in November 2005 that plaintiffs were

withdrawing J.W., the District's CSE convened, classified J.W. as learning disabled, and

developed an IEP recommending, *inter alia*, multisensory instruction, speech/language

therapy, modified curriculum, and testing accommodations.  Plaintiffs acknowledged the IEP,

but kept J.W. at Kildonan for the remainder of the school year.

     The CSE met in May 2006 to formulate an IEP for the 2006-2007 school year, when

J.W. would be in ninth grade.  The CSE recommended that J.W. attend integrated classes for

math and science and special classes for English and social studies.  The IEP again

recommended multisensory language therapy, speech/language therapy, and that J.W. receive

"a copy of class notes", and testing accommodations.  J.W., however, attended Kildonan for

the 2006-2007 school year.

     The CSE met on May 4, 2007 for J.W.'s annual review and to develop an IEP for the

2007-2008 school year, when J.W. would be in tenth grade.  The 2007-2008 IEP contained the

same recommendations as the previous year, but did not include a recommendation for

multisensory language therapy despite a notation that J.W. would "benefit from a multisensory

approach to language arts".  The IEP also noted that "Parent has chosen to unilaterally enroll

student at: Kildonan."

     Along with a cover letter dated July 6, 2007, Beth Lewis, Director of Special Education

at the District, sent plaintiffs a copy of the IEP developed at that May 4, 2007 CSE meeting.  In

the letter Lewis stated:

> If you have any questions regarding this notice, please do not hesitate to contact
> our office.  Upon your request, we will arrange a meeting to discuss any questions
> that you may have about the recommendation or provide you with additional
> resources to contact to obtain assistance in understanding this information.

Previously you have received a Procedural Safeguards Notice that explains your rights regarding the special education process, but if you need an additional copy, please contact our office and we will forward one to you.

In a letter to Lewis dated August 28, 2007, plaintiffs informed the District that they were rejecting J.W.'s IEP and would be "removing him from Kingston High School in ten business days and . . . enrolling him at the Kildonan School for Dyslexics, and wish to have the district pay for his tuition at Kildonan for the 2007-2008 school year."  In the letter, plaintiffs enumerated sixteen objections to the IEP, including their concerns that the "IEP was based on insufficient evaluation information (due to information being out of date)", the CSE did not "consider placement at a school like Kildonan or another special school for students like" J.W., and the goals "proposed for [J.W.'s] reading and writing were inadequate, vague, and the criteria for measuring progress [were] too subjective and vague".  Plaintiffs requested that the District pay J.W.'s "complete tuition from Kildonan of $36,000 for the 2007-2008 school year."

In a letter to Mr. Wood dated September 23, 2007, Lewis wrote: "I have received your letter dated August 28, 2007 and invite you to meet with me to discuss your son's IEP concerns.  Please do not hesitate to contact me."

On November 2, 2007, plaintiffs filed a due process complaint regarding their objections to the 2007-2008 IEP.  In a letter dated November 19, 2007, the District replied to plaintiffs' notice and allegations.  A hearing before Impartial Hearing Officer Dora Lassinger commenced on February 11, 2008 and concluded on May 6, 2008 after six days of testimony.

At the hearing, the District called four witnesses: Lewis, District Director of Special Education; Jean Devre, high school multisensory reading teacher; Nora Scherer, high school

special education teacher; and Jennifer Couse, high school speech therapist.  Plaintiffs called

three witnesses: Mrs. Wood; Robert Lane, Jr., Academic Dean at Kildonan; and Randall

Thomas, Ph.D, neuropsychologist.

In a decision dated June 23, 2008, the IHO found that the IEP was inadequate because

it was based on testing performed in 2005, rather than current records from Kildonan, the goals

did not adequately address J.W.'s deficits, it contained no goals for writing, it included speech-

language therapy for no clear reason, and it did not adequately address J.W.'s reading deficit.

The IHO next found that plaintiffs had established that Kildonan was appropriate for J.W. and

concluded that equitable considerations supported plaintiffs' claim for tuition reimbursement.

The District appealed the IHO's decision and State Review Officer Paul Kelly found

that the District failed to establish that the IEP it recommended "was reasonably calculated to

enable the student to receive education benefits."  The SRO next found that "the parents

placement of the student at Kildonan was reasonably calculated to enable the student to receive

educational benefits and that the parents have carried their burden of demonstrating the

appropriateness of their unilateral placement."  The SRO, however annulled the IHO's

decision "to the extent that it found that equitable considerations favored the parents and

awarded them tuition reimbursement for their unilateral placement of the student at Kildonan

for the 2007-08 school year."  The SRO explained that:

> the parents did not provide the requisite notice to the district that they were
> unilaterally placing the student at Kildonan and seeking tuition reimbursement,
> acted unreasonably and, as such, equitable considerations in this case do not favor
> an award of tuition reimbursement for the parents.  In addition, I note that when the
> parents became aware of deficiencies or omissions in the IEP when they received
> it during the summer 2007, they did not provide notice of their dissatisfaction with
> the IEP in a timely manner which would have enabled the CSE to attempt to
> correct any mistakes in the IEP.  Moreover, in this case, the district contacted the

parents on September 23, 2008, in an effort to invite them to meet to discuss their concerns regarding the IEP. The parents did not respond to this invitation and instead moved forward with an impartial hearing. Under the circumstances of this case, I find that the equities do not support an award of tuition reimbursement.

Plaintiffs filed this action to contest the SRO's finding that the equities do not support an award of tuition reimbursement for the 2007-2008 school year.

## III.   DISCUSSION

### A.   Motion and Cross-Motion for Summary Judgment

#### 1.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

### 2.       Summary Judgment in an IDEA Case

As the Second Circuit has noted:

> a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a "pragmatic procedural mechanism" for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits.

*Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (citing, *inter alia*, *Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F.Supp. 501, 508 & n. 6 (E.D.N.Y. 1996) (analogizing the role Rule 56 motions play in allowing courts to review administrative determinations in IDEA cases to the role Rule 12(c) motions play in allowing administrative review of Social Security determinations)).   The role of the reviewing court in assessing the application of the IDEA's provisions to the facts of a particular case is a mixed question of law and fact.   *See J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 64 (2d Cir. 2000).   The Court's role in making this assessment is "circumscribed" under the IDEA and the Supreme Court's decision in *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982).   "The responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers."   *Walczak*, 142 F.3d at 129.   Although their "rulings are then subject to 'independent' judicial review", this "'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities they review.'"   *Id.* (quoting *Rowley*, 458 U.S. at 205, 206).   Accordingly, when the state hearing officer's review has been "thorough and careful", the court is "expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and

experience necessary to resolve persistent and difficult questions of educational policy.'" *Id.* (quoting *Rowley*, at 206, 208) (internal quotation marks omitted).

The IDEA provides that the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

### 3.     Tuition Reimbursement under the IDEA

To obtain reimbursement for the cost of private school, the parents must establish that: (1) the IEP the school district proposed was inappropriate; and (2) the private placement was appropriate to the child's needs.  *See Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 370 (1985); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) ("The party who commences an impartial hearing . . .bears the burden of persuasion") (citing *Schaffer v. Weast*, 546 U.S. 49, 57-58 (2005)).  Even if the parents satisfy these two factors, the decision whether to award tuition reimbursement is within the Court's discretion. 20 U.S.C. § 1412(a)(10)(C)(ii) ("[A] court or a hearing officer may require the agency to reimburse the parents for the cost of [private] enrollment.") "Moreover, because the authority to grant reimbursement is discretionary, 'equitable considerations [relating to the reasonableness of the action taken by the parents] are relevant in fashioning relief.'"  *Frank G.*, 459 F.3d at 363-64 (quoting *Burlington*, 471 U.S. at 374; *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000); 20 U.S.C. § 1412(a)(10)(C)(iii)(III)).

### a.     Appropriateness of IEP and Private Placement

In this case, neither plaintiffs nor the District challenge the finding by the IHO and

SRO that the 2007-2008 IEP was inappropriate.  The SRO found that the CSE did not have

current evaluative data when formulating J.W.'s 2007-2008 IEP, the goals on the IEP did "not

adequately address the student's deficits" and the IEP included no goals for writing "even

though writing is an identified primary area of deficit".  Nor do the parties dispute the finding

by the IHO and SRO that plaintiffs' placement of J.W. at Kildonan was appropriate to his

needs.  The SRO recounted the testimony by Kildonan's academic dean that "the school's

general philosophy primarily involves remediation of the basic language needs of students with

dyslexia or specific language-based learning disabilities" and that J.W., who had "difficulty in

spelling writing, and reading fluency", was benefitting from "instruction at Kildonan".  The

parties have presented no evidence or arguments to contradict these findings.  According due

weight to the SRO's findings, the Court therefore concludes that plaintiffs have established

that the 2007-2008 IEP was inappropriate and that Kildonan was appropriate to J.W.'s needs.

Thus, the narrow issue before the Court is whether the equities favor tuition reimbursement.

Both parties rely on the state administrative record in support of their motions.  Additionally,

plaintiffs have submitted was is purported to be an affidavit by plaintiff Stephen Wood.[2]

### b.    Equitable Considerations

In this case, the SRO found that the equities did not favor an award of tuition

reimbursement because plaintiffs failed to provide timely notice to the District of their

dissatisfaction with the IEP and intent to enroll J.W. in Kildonan for the 2007-2008 school year

at the District's expense.  Specifically, the SRO rejected plaintiffs' argument that they had

satisfied the IDEA's notice requirement when they first notified the District in 2005 that they

---

[2]The District objects to the Court's consideration of Mr. Wood's affidavit.  The Court has reviewed it but finds it immaterial.  Further, it is neither notarized nor signed.

were removing J.W. from the District and placing him in Kildonan and held that the IDEA's "notice requirement must be fulfilled every school year".  The SRO explained that had plaintiffs timely notified the District of their dissatisfaction with the IEP, the CSE would have been able "to attempt to correct any mistakes in the IEP".  The SRO also cited plaintiffs' decision to proceed with an impartial hearing, rather than to respond to the District's Special Education Director's invitation to meet to discuss their concerns regarding the IEP, as evidence of their unreasonable actions and lack of cooperation with the District.  Plaintiffs move for summary judgment and challenge the SRO's finding that they are not entitled to tuition reimbursement.  The District opposes plaintiffs' motion and cross-moves for summary judgment affirming the SRO's decision in all respects.

 "[T]he district court enjoys broad discretion in considering equitable factors relevant to fashioning relief." *Gagliardo*, 489 F.3d at 112 (citing *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993)).  One factor the Court must consider is whether plaintiffs have complied with the IDEA's requirement that they timely notify the District of their dissatisfaction with the proposed IEP and placement of their child in a private school.  *See Forest Grove Sch. Dist. v. T.A.*, -- U.S. -- ,129 S.Ct. 2484, 2496 (2009) ("[C]ourts retain discretion to reduce the amount of a reimbursement award if the equities so warrant-for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school.").  The IDEA states that "[t]he cost of reimbursement . . . may be reduced or denied if . . . 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency" that they were rejecting the proposed placement "including stating their

concerns and their intent to enroll their child in a private school at public expense".  20 U.S.C. § 1412 (a)(10)(C)(iii)(I).  Further, "[t]he cost of reimbursement . . .may be reduced or denied . . . upon a judicial finding of unreasonableness with respect to actions taken by the parents."  *Id*. at § 1412 (a)(10)(C)(iii)(III).

In this case, it is undisputed that the District received plaintiffs' August 28, 2007 letter on September 5, 2007 - - five business days prior to J.W.'s commencement of the 2007-2008 school year at Kildonan.  Plaintiffs assert, however, the SRO erred in holding that the IDEA's "notice requirement must be fulfilled every school year" and that their August 28, 2007 letter was untimely.  Plaintiffs argue that the IDEA's ten day notice requirement only applies to the initial removal of the student from public school.  Therefore, plaintiffs assert, the ten days' notice they provided to the District in November 2005, when they first removed J.W. and enrolled him in Kildonan, satisfied the IDEA.

The IDEA states that the "cost of reimbursement [for private school placement] may be reduced or denied . . . if . . .10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency" "that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense".  20 U.S.C. § 1412 (a)(10)(C)(iii)(I).[3]  "As a practical

---

[3]Section 1412(a)(10)(C)(ii) -(iv) states:

(ii) Reimbursement for private school placement
If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse

reality, and as a matter of procedural law . . ., the right of review contains a corresponding

parental duty to unequivocally place in issue the appropriateness of an IEP." *Bernardsville Bd.*

*of Educ. v. J.H.*, 42 F.3d 149, 158 (3d Cir. 1994). "[C]ourts have held uniformly that

reimbursement is barred where parents unilaterally arrange for private educational services

without ever notifying the school board of their dissatisfaction with their child's IEP."

*Voluntown*, 226 F.3d at 68. Thus, regardless of whether J.W. had, as plaintiffs argue, already

been "removed" from public school to the extent that he had not attended school in the District

for two years, plaintiffs were nonetheless obligated to notify the District of their dissatisfaction

---

the parents for the cost of that enrollment if the court or hearing officer finds that the
agency had not made a free appropriate public education available to the child in a
timely manner prior to that enrollment.
(iii) Limitation on reimbursement
**The cost of reimbursement described in clause (ii) may be *reduced or denied*--**
(I) if--
(aa) at the most recent IEP meeting that the parents attended prior to removal of the
child from the public school, the parents did not inform the IEP Team that they were
rejecting the placement proposed by the public agency to provide a free appropriate
public education to their child, including stating their concerns and their intent to
enroll their child in a private school at public expense; or
(bb) **10 business days (including any holidays that occur on a business day) prior
to the removal of the child from the public school, the parents did not give
written notice to the public agency of the information described in item (aa)**;
(II) if, prior to the parents' removal of the child from the public school, the public
agency informed the parents, through the notice requirements described in section
1415(b)(3) of this title, of its intent to evaluate the child (including a statement of the
purpose of the evaluation that was appropriate and reasonable), but the parents did not
make the child available for such evaluation; or
(III) upon a judicial finding of unreasonableness with respect to actions taken by the
parents.
(iv) Exception
Notwithstanding the notice requirement in clause (iii)(I), the cost of reimbursement--
(I) shall not be reduced or denied for failure to provide such notice if--
(aa) the school prevented the parent from providing such notice;
(bb) the parents had not received notice, pursuant to section 1415 of this title, of the
notice requirement in clause (iii)(I) . . . .

13

with the IEP before re-enrolling J.W. in Kildonan.  *See also S.W. v. New York City Dep't of Educ.*, 646 F.Supp.2d 346, 366 (S.D.N.Y. 2009) (rejecting the plaintiffs' argument and holding that the IDEA's notice requirements applied to the plaintiffs, whose child was already enrolled in private school, reasoning that the reading advanced by the plaintiffs "would mean that parents of children who are . . . not currently enrolled in public school, [would] have no obligation whatsoever to notify their local school district before enrolling or re-enrolling their children in private school.").

Plaintiffs further argue that even if annual notice is required, they fall within the IDEA's exception to providing notice because the District never informed them that they had to notify the District before re-enrolling J.W. in Kildonan.  The IDEA states that tuition reimbursement "shall not be reduced or denied for failure to provide such notice if-- . . . the parents had not received notice" of their obligation to notify the District of their dissatisfaction with the IEP ten business days before their removal of the student from public school.  20 U.S.C. § 1412(a)(10)(C)(iv)(I)(bb).

In this case, the "Notice to Parents of Procedural Safeguards" from the District states that if a parent places a child in a private school because of a disagreement with a school district that an appropriate program has been made available, tuition reimbursement "may be denied or reduced if you do not . . . provide the school district with written notice at least ten business days (including any holidays that occur on a business day) prior to removing your child from the public school."  *See* District's Statement of Material Facts, Dkt. No. 19-1, ¶ 66.

4   Thus, the Notice from the District closely tracks the statutory notice requirements.  *See* 20

U.S.C. § 1412(a)(10)(C)(iii)(I)(aa) and (bb).  Further, plaintiffs' own letter belies any assertion

that they were unaware of their obligation to provide 10 business days notice of their

dissatisfaction with the IEP and intent to enroll J.W. in private school.  In the August 28, 2007

letter, Mr. Wood states, "This letter is to inform your department that we are rejecting our son

Joseph's IEP and will be removing him from Kingston High School in ten business days and

will be enrolling him at the Kildonan School for Dyslexics, and wish to have the district pay

for his tuition at Kildonan for the 2007-2008 school year."  District Ex. 11.  Thus, there is no

basis on which to find that plaintiffs were unaware of their obligation to provide "ten business

days" notice, annually, that they were removing J.W. from the public school.

Plaintiffs argue that even if their notice was late, because the 2007-2008 IEP itself

indicated that J.W. was enrolled at Kildonan, the District had been on notice since the May 4,

2007, CSE meeting, where the IEP was drafted, that they were enrolling J.W. at Kildonan.

Regarding this argument, the SRO noted that although "the IEP generated at the May 4, 2007

CSE meeting listed the student as being unilaterally enrolled at Kildonan", "[t]estimony at the

hearing indicates that the notation on the 2007-2008 IEP may have been carried over from the

student's 2006-07 IEP."  Plaintiffs cite no evidence or testimony showing that they informed

the CSE during or prior to the May 4, 2007, meeting that they were sending J.W. to Kildonan.

Indeed, Mrs. Wood testified that they had not yet decided where to send J.W. for the 2007-

2008 school year.  Thus, this argument is without merit.

─────────────────

⁴Both parties cite to Parents Exhibit V, page 8 as containing the specific provision.  Page 8,
however, is missing from the record.

Finally, plaintiffs take issue with the SRO's conclusion that the CSE would have been able "to attempt to correct any mistakes in the IEP" if plaintiffs' notification had been timely, and that plaintiffs' failure to respond to the District's September 23, 2007, letter inviting them to discuss their concerns weighed against tuition reimbursement.  A "major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the [school district] throughout the process to ensure that their child receives a F[ree] A[ppropriate] P[ublic] E[ducation]."  *Bettinger v. New York City Bd. of Educ.*, No. 06 CV 6889, 2007 WL 4208560, at *6 (S.D.N.Y. Nov. 20, 2007).

In their August 28, 2007 letter, plaintiffs specifically laid out their concerns about J.W.'s IEP.  The letter was a three-page, single-spaced, document in which plaintiffs specifically enumerated each of their sixteen objections to the IEP.  Further, the letter contained plaintiffs' recommendations as to what the IEP would need to include in order to meet J.W.'s specific learning needs as well as their questions about special education for tenth grade students, including, homework requirements, technology courses, and whether writing in script or typing would be required.  The District, however, made no appreciable attempt to address plaintiffs' objections or to reconsider the 2007-2008 IEP, but instead responded with a two-sentence letter from the special education director stating: "I have received your letter dated August 28, 2007 and invite you to meet with me to discuss your son's IEP and concerns. Please to not hesitate to call my office at your convenience."  Since plaintiffs had already discussed the IEP and outlined their concerns in their detailed letter, the Court does not find their failure to respond to the District's generic letter to be evidence of uncooperativeness. Indeed, the District's generic response to plaintiffs' specific concerns undermines any

conclusion that had plaintiffs placed the appropriateness of J.W.'s IEP in issue 5 business days

earlier, the need for J.W.'s placement in Kildonan would have been obviated.  *Cf. Voluntown*,

226 F.3d at 69 (declining to reimburse the plaintiffs for the cost of psychological counseling

services for the student because the plaintiffs failed to raise any issue with respect to the

counseling provided for the student in the IEP until eight months after the student's

psychological counseling ended, explaining that "'it is impossible to determine with any

certainty whether [their] expenditures were indeed necessary, or whether a prompt complaint .

. . might have obviated the need for those expenditures'") (quoting *Garland Independent Sch.*

*Dist. v. Wilks*, 657 F.Supp. 1163, 1168 (N.D.Tex. 1987)).  Thus, having addressed the parties'

arguments concerning the SRO's findings, all of which the District argued in support of, the

Court will consider whether the equitable factors discussed above warrant tuition

reimbursement.

      Having considered the entire record, and accorded due weight to the SRO's findings,

the Court, in its discretion, concludes that the equities warrant some level of tuition

reimbursement.  Although plaintiffs' notice to the District was five business days late, and

therefore untimely under the IDEA, the Court finds denial of tuition reimbursement would be

inequitable.  The facts of this case, even as the SRO found them, do not approach the level of

uncooperativeness by parents which courts have found to justify denial of tuition

reimbursement altogether.  *Cf. S.W. v. New York City Dep't of Educ.*, 646 F.Supp.2d 346, 364

(S.D.N.Y. 2009) (denying tuition reimbursement because the plaintiff did not give written

notice to the department of education that she was rejecting the public school placement and

enrolling the student in a private school until four months after the student began attending the

private school, seven months after the CSE meeting, and three months after visiting the public

school placement); *Carmel Cent. Sch. Dist. v. V.P.*, 373 F.Supp.2d 402, 416 (S.D.N.Y. 2005)

(declining to award tuition reimbursement where the parents "never had the slightest intention

of allowing the child to be educated in the public school, and did everything possible so that

they could frustrate a timely review of [the child's] condition" before enrolling the child in a

private school).

Here, although plaintiffs' notice was untimely, because plaintiffs waited nearly two

months to inform the District of their dissatisfaction with the IEP and because plaintiffs only

provided the District with five business days notice that they were enrolling J.W. in Kildonan,

it was received by the District before J.W. commenced the school year at Kildonan.  Further,

the notice adequately informed the District of plaintiffs' objections to the IEP and alerted the

District to the changes needed.  Rather than responding in any specific manner, the District

responded by sending plaintiffs a letter inviting them to contact the special education director

to discuss the "IEP and concerns".  Because plaintiffs had already, and thoroughly, discussed

their concerns in their August 28, 2007, letter, the Court does not find plaintiffs' failure to

respond to the District's invitation, and pursuit of a due process hearing instead, to be evidence

of a level of uncooperativeness that clearly justifies a denial of tuition reimbursement.

Further, there is no indication that plaintiffs never intended to return J.W. to the

District.  Plaintiffs had cooperated with the District for the two previous school years in an

effort to obtain a free appropriate public education for J.W.  Although plaintiffs signed

contracts with Kildonan in May and July 2007, they did so, as Mrs. Wood testified, "in order to

save his place".  Mrs. Wood further testified that the director of Kildonan  "understood that we

were not clear if we were going to keep him there or not."  Mrs. Wood also testified that as of

the time of the May 4, 2007, CSE meeting, plaintiffs "were considering" continuing J.W. at

Kildonon but that a final determination had not been made.  Mrs. Wood explained that they

waited until August 28, 2007 to inform the District that they were placing J.W. at Kildonan

because they "received the IEP in July, we were away for a certain period of time and had to

decide what we were going to do.  So we didn't actually start the process until August."

Additionally, Mrs. Wood testified that "we didn't see the IEP until July, and at that point we

saw that some services had been removed and we planned to keep him at Kildonan."  Thus, the

Court concludes that plaintiffs are entitled to summary judgment on their claim for tuition

reimbursement.  However, in view of plaintiffs' delay in notifying the District, however, the

Court, exercising its discretion, reduces the award of tuition reimbursement by ten percent.

*See* 20 U.S.C. § 1412(a)(10)(C)(iii) ("The cost of reimbursement . . . may be *reduced or*

*denied*" if the parents failed to give written notice to the district 10 business days prior to the

removal of the child from the public school).  Accordingly, the District's cross-motion for

summary judgment is denied and plaintiffs' motion for summary judgment is granted.


**B.     MOTION TO DISMISS**

Plaintiffs have named the State Education Department ("SED") and Commissioner

Richard Mills ("the State defendants") as defendants in this action and allege that SRO Paul

Kelly is filled with personal animus toward the disabled, rules against the disabled the majority

of the time and is biased because he resides with an attorney employed by the SED and

Commissioner.  Based on these allegations, plaintiffs allege defendants have violated the

procedural requirements of the IDEA and advance a claim of deprivation of due process of law

under the Fourteenth Amendment.  Plaintiffs seek, pursuant to the IDEA and § 1983, an order

declaring the State defendants have violated the IDEA, injunctive relief exempting plaintiffs

from exhausting their administrative remedies in connection with any future claims, and

reimbursement for Kildonan tuition.  The State defendants move to dismiss these claims.

### 1.      Motion to Dismiss Standard

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true, draw all reasonable inferences in favor of the

plaintiff and decide whether the plaintiff has pled a plausible claim for relief.  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  The

appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is

entitled to offer evidence to support the claims in the complaint.  *Nechis v. Oxford Health

Plans, Inc*., 421 F.3d 96, 100 (2d Cir. 2005).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, - - U.S. - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell

Atlantic*, 550 U.S. at 570).

### 2.      IDEA Claims

According to the complaint, plaintiffs sue the State Education Department ("SED") and

Commissioner Richard Mills "for their part in breaching the IDEA's mandate that the State

implement policies and systems to assure that the statutory procedural safeguards are available

to all eligible disabled children and their parents.  Those procedures include an un-biased

administrative review procedure."  For these alleged violations, plaintiffs seek a declaration

from the Court that SRO Paul Kelly is biased as well as injunction permitting them to bypass the administrative review process in the future because it is futile.

The State defendants move for dismissal on the basis that the complaint contains no plausible claim for relief.  Plaintiffs have obtained all the relief to which they are entitled in connection with their quest for tuition reimbursement for the 2007-2008 school year.  Moreover, courts in the Second Circuit have held that neither the SED nor Commissioner are "proper or necessary part[ies] to an appeal of a hearing officer's decision under the IDEA." *M.K. v. Sergi*, No. 3:96cv00482, 2007 WL 988621, at *4 (D.Conn. Mar. 30, 2007) (citing *Fetto v. Sergi*, 181 F.Supp.2d 53, 71 (D.Conn. 2001)); *see also B.J.S. v. State Educ. Dep't./Univ. of N.Y.*, 699 F.Supp.2d 586, 599 (W.D.N.Y. 2010 ) ("the controversy over the propriety of the IEP and whether it deprives the student of an FAPE remains one between the student, or, as here, the student's parents, and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an FAPE and IEP is that of the relevant educational agency, in this case the School District, not State Defendants.  Nothing in the Act either directly or impliedly suggests that by their compliance with the Act's requirement to provide impartial review of an administrative complaint attacking an IEP, State Defendants thereby become parties to the underlying dispute.").

In this case plaintiffs also advance claims under the IDEA on the grounds that the "two-tier administrative review procedure" is inadequate, SRO Paul Kelly rules against the disabled the majority of the time and is biased and filled with personal animus toward the disabled and resides with an attorney employed by the SED and Commissioner, and that the SED has failed to take corrective action.  Courts have permitted actions against state

educational agencies in cases involving "claims of systemic violations of the IDEA." *Fetto*, 181 F.Supp.2d at 72; *D.D. v. New York City Bd. of Educ.*, No. CV-03-2489, 2004 WL 633222, at *22 (E.D.N.Y. Mar. 30, 2004). Plaintiffs' claims against the State defendants, however, are vague and conclusory and fail to identify any systemic violation of the IDEA. Accordingly, having drawn all reasonable inferences in plaintiffs' favor, the Court finds the complaint fails to state a plausible claim for relief.

### 3.   Fourteenth Amendment

According to the complaint, the State defendants have violated the due process clause of the Fourteenth Amendment because the SRO rules against disabled students the majority of the time and cohabitates with an SED attorney. These allegations fail to plead a plausible claim for relief under the due process clause of the Fourteenth Amendment. Plaintiffs' allegations are conclusory and advance no facts which intimate impropriety in connection with the administrative proceedings generally or their administrative proceeding in particular. *See e.g. B.J.S.*, 699 F.Supp.2d at 611 (granting motion to dismiss the plaintiff's claims against the SED and Commissioner Mills and finding the plaintiff's accusations of bias by the SRO failed to assert "facts sufficient to establish a plausible claim of [a constitutional due process] violation by State Defendants."). Accordingly, the State defendants' motion to dismiss is granted and plaintiffs claims against the SED and Commissioner Mills are dismissed without prejudice.

## V.   CONCLUSION

For the foregoing reasons it is hereby

**ORDERED** that plaintiffs' motion for summary judgment against defendant Kingston

City School District on the first cause of action is granted; and it is further

 **ORDERED** that the District's motion for summary judgment is denied; and it is further

 **ORDERED** that plaintiffs are awarded reimbursement for the cost of tuition for J.W.'s attendance at Kildonan for the 2007-2008 school year, reduced by ten percent (10 %); and it is further

 **ORDERED** that the motion to dismiss by the SED and Commissioner Mills is granted; and it is further

 **ORDERED** that the claims against the SED and Commissioner Mills, as well as the second cause of action, are dismissed without prejudice; and it is further

 **ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

 **IT IS SO ORDERED.**

Dated: September 29, 2010
  Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

23